**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

In re

       **Thomas Albert DeMartino,**                   **Chapter 7**
                                                                **Case No. 1-09-40443-jf**

                  **Debtor.**

---------------------------------------------------X

**Richard E. O'Connell,** *as Chapter 7 Trustee of the*
*Estate of Thomas Albert DeMartino* **and**
**Centennial Insurance Company,**

                  **Plaintiffs.**                        **Adv. Pro. No. 1-09-01367-jf**

      - against-

**Thomas Albert DeMartino,**

                 **Defendant.**
---------------------------------------------------X

**DECISION AND ORDER GRANTING SUMMARY JUDGMENT AND DENYING**
**DISCHARGE**

**APPEARANCES:**

Jordan Pilevsky, Esq.                                   Vivian M. Williams, Esq.
LaMonica Herbst & Maniscalco LLP             60 E. 42nd Street, 46th Floor
3305 Jerusalem Avenue, Suite 201               New York, N.Y. 10165
Wantagh, N.Y. 11793                              Attorney for Defendant
Attorney for Richard E. O'Connell

Richard B. Demas, Esq.
Gottesman Wolgel Secunda Malamy & Flynn
11 Hanover Square, 4th Floor
New York, N.Y. 10005
Attorney for Centennial Insurance Company

                                                 **Jerome Feller**
                                 **United States Bankruptcy Judge**

Before the Court is a joint motion for summary judgment ("Motion") pursuant to Fed. R. Civ. P. 56, made applicable hereto by Fed. R. Bankr. P. 7056, filed by Co-Plaintiffs Richard J. O'Connell, the Chapter 7 Trustee ("Trustee") of the estate of Thomas Albert DeMartino ("Debtor") and Centennial Insurance Company ("Centennial"), a creditor,[1] on three of seven claims objecting to the Debtor's discharge contained in their amended complaint.[2] The Motion seeks summary judgment denying the Debtor's discharge pursuant to i) 11 U.S.C. § 727(a)(2)(B) (concealing property of the estate after the filing of the bankruptcy petition); ii) 11 U.S.C. § 727(a)(3) (failure to keep and preserve recorded information); and iii) 11 U.S.C. § 727 (a)(4)(A) (making a false oath or account). The Debtor opposes the Motion and requests costs and attorney's fees.

For the reasons hereinafter set forth, we grant the Motion and sustain Plaintiffs' objection to discharge pursuant to § 727(a)(3) and/or § 727(a)(4)(A). Since we deny the Debtor's discharge pursuant to § 727(a)(3) and/or § 727(a)(3)(A), we find it unnecessary to address Plaintiffs' request for relief under § 727(a)(2)(B). Debtor's cross-motion for costs and attorney's fees is denied.

**I.**

On January 23, 2009, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. He listed his employment as a self-employed contractor/handyman. On February 24, 2009, the Trustee conducted the statutory meeting of creditors under 11 U.S.C. § 341 in which Centennial participated. The Trustee and Centennial examined the Debtor under Fed. R. Bankr. P. 2004 on

---

[1] Centennial holds three New York State Court judgments totaling $367,834.67.
[2] Alternatively, the Motion sought judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), made applicable hereto by Fed. R. Bankr. P. 7012(c). At the December 7, 2010 hearing on the Motion, Plaintiffs withdrew their requests for relief on the pleadings and agreed that summary judgment was the appropriate procedural vehicle upon which to proceed. (Dckt. No. 31 at 12-13).

June 24, 2009. On September 23, 2009, the Trustee filed a complaint objecting to the Debtor's discharge pursuant to several provisions of 11 U.S.C. § 727(a). The Trustee's adversary proceeding was designated Adv. Proc. No. 09-1367. Later that same day, Centennial filed a substantially similar complaint objecting to the Debtor's discharge pursuant to several provisions of 11 U.S.C. § 727(a). Centennial's adversary proceeding was designated Adv. Proc. No. 09-1368. By stipulation and order entered on May 7, 2010 (Dckt. No. 16), the parties agreed to i) dismissal of Adv. Proc. No. 09-1368; ii) joinder of Centennial as co-plaintiff in the Trustee's adversary proceeding (Adv. Proc. No. 09-1367); iii) amend the caption of Adv. Proc. No. 09-1367 to reflect Centennial as co-plaintiff with the Trustee (collectively "Plaintiffs"); and iv) file an amended complaint in Adv. Proc. No. 09-1367. An amended complaint was filed by the Plaintiffs on May 7, 2010 (Dckt. No. 13). The Debtor filed an amended answer to the amended complaint on May 18, 2010 (Dckt. No. 17).

On September 7, 2010, Plaintiffs filed the Motion now before the Court for adjudication (Dckt. No. 19). As required by E.D.N.Y. LBR 7056-1, Plaintiffs filed with the Motion a statement of material facts as to which they believe there exists no genuine issue to be tried, supported by various exhibits (Dckt. No. 20). The Debtor filed a combined opposition to the Motion and cross-motion for costs and attorney's fees pursuant to 28 U.S.C. § 1928 ("Opposition Papers") (Dckt. No. 25). Although E.D.N.Y. LBR 7056-1 mandates that opposition to a summary judgment motion shall include a separate statement of the material facts as to which the Debtor contends there is a genuine issue to be tried, the Opposition Papers are conspicuously lacking any such statement. Essentially, the Opposition Papers consist solely of statements and arguments of Debtor's counsel, unsupported by any admissible evidentiary material. The Trustee submitted a reply (Dckt. No. 27) and Centennial filed a declaration in response (Dckt. No. 30) to the Opposition Papers.

## II.

On or about July 22, 2009, the Debtor asserted a lien against real property located at 157-31 83rd Street, Howard Beach, New York ("83rd Street Property") with his filing of a "Notice Under Mechanic's Lien Law" with the Clerk of the County of Queens ("83rd Street Lien"). The asserted 83rd Street Lien was in the amount of $100,000 for work performed on the 83rd Street Property and related material provided from January 15, 2004 through May 25, 2009 pursuant to an agreement with Guiseppe DeMartino a/k/a Joseph DeMartino, the Debtor's father ("Joseph DeMartino").

On or about September 14, 2009, the Debtor asserted a lien against real property located at 158-11 96th Street, Howard Beach, New York ("96th Street Property") with his filing of a "Notice Under Mechanic's Lien Law" with the Clerk of the County of Queens ("96th Street Lien"). The asserted 96th Street Lien was in the amount of $107,000 for work performed on the 96th Street Property and related material provided from April 1, 2003 through May 17, 2009 pursuant to an agreement with Joseph DeMartino.

Earlier, on or about May 4, 2009, the Debtor, through a wholly owned and controlled corporation, TDI Construction, Inc. ("TDI") asserted a lien against the 96th Street Property with the filing of a "Notice Under Mechanic's Lien Law" with the Clerk of the County of Queens. The lien asserted by TDI was in the amount of $100,000 for work performed on the 96th Street Property and related material provided from April 1, 2003 through February 15, 2009 pursuant to an agreement with Joseph DeMartino.

Neither the asserted liens or, more importantly, the claims underlying the claimed liens are disclosed in the Debtor's schedules. Schedule B calls for the disclosure of "accounts receivable" (item 16) and "other liquidated debts owed to debtor" (item 18). In response to items

16 and 18, the Debtor answered, under penalty of perjury, "none". Schedule G calls for the disclosure of executory contracts. Although, the services rendered and material provided continued post-petition, the Debtor in Schedule G states, under penalty of perjury, that he had no executory contracts. No amendments to the schedules were filed by the Debtor.

On or about September 24, 2008, four months prior to the Debtor's bankruptcy filing, Anthony Lazzaro, the principal of Metro Foundation Contractors, Inc. commenced a lawsuit in the Supreme Court of the State of New York, County of Queens, captioned *Anthony Lazzaro v. Thomas DeMartino, TDI Construction, Inc., Angela Militana, Angelina Militana, Jason Karavias and Speed Lien, Inc.* Indexed No. 23728-2008 (the "State Court Action"). Among other things, the complaint in the State Court Action alleges that i) Debtor was employed as a management consultant to oversee job site operations on certain construction projects performed by companies owned by Anthony Lazzaro; ii) the Debtor received $1,250 per week from May 2007 through July 2008 for such services (approximately $75,000); and iii) these payments were transferred by the Debtor to his wife.

Under item 4 of the statement of financial affairs a debtor is required, under penalty of perjury, to list all lawsuits to which the debtor was party within one year preceding the filing of the bankruptcy case. The Debtor failed to disclose the State Court Action on both the original statement of financial affairs filed with the bankruptcy petition on January 23, 2010 (Main Case Dckt. No. 1) and on an amended statement of financial affairs filed on March 26, 2009 (Main Case Dckt. No. 23).

### III.

Under Fed. R. Civ. P. 56, a motion for summary judgment should be granted if the movant demonstrates that there is no genuine dispute as to material fact and is entitled to

judgment as a matter of law. The party moving for summary judgment has the initial burden of showing the absence of a genuine material fact issue. Plaintiffs have satisfied the initial burden with the submission of their separate statement of material facts supported by exhibits as required by E.D.N.Y. LBR 7056-1. The burden now shifts to the non-movant, the Debtor, to demonstrate summary judgment is inappropriate. This burden is not met by reliance on bare allegations or denials in the pleadings of the non-movant. Nor is it met by unsubstantiated or conclusory assertions that genuine fact issues exist. A non-movant can successfully oppose summary judgment only by producing "significant probative evidence" that there is a genuine issue of material fact as to warrant a trial. *See Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996). A non-movant may not defeat a summary judgment motion by making far reaching allegations or arguments that are not grounded in fact. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). *Hankin v. Mersey Mold & Model Co. (In re Countryside Manor, Inc.),* 239 B.R. 443, 447 *(Bankr. D. Conn. 1999); Rzasa v. Bugnacki (In re Bugnacki)*, 439 B.R. 12, 19-20 (Bankr. D. Conn. 2010).

In relevant part, E.D.N.Y. LBR 7056-1 provides as follows:

> The opposition to a motion for summary judgment shall include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party. Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible. . . .

E.D.N.Y. LBR 7056-1. As indicated above, the Debtor has not complied with E.D.N.Y. LBR 7056-1. He has failed to file a separate counter-statement of specific factual disputes or any admissible evidence to support any factual disputes. Accordingly, the Court concludes that there are no genuine issues of material fact in dispute. We now turn to the question as to whether Plaintiffs are entitled to judgment as a matter of law.

### IV.

Plaintiffs' fourth claim for relief is premised on 11 U.S.C. § 727(a)(4)(A). That statute provides:

> (a) The court shall grant the debtor a discharge, unless —
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case —
>
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A). In order to deny a debtor his discharge under this provision, the complainant must establish the following elements: i) the debtor made a statement under oath; ii) such statement was false; iii) the debtor knew the statement was false, iv) the debtor made the statement with fraudulent intent; and v) the statement related materially to the bankruptcy case. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992) (citing *In re Sapru*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991).

The Debtor submitted his bankruptcy schedules and statement of financial affairs on the prescribed forms, which required him to verify the averments in them under penalty of perjury. *See* Fed. R. Bankr. P. 1008. By statute, that has the force and effect of an oath. 28 U.S.C. §

1746. *See also Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. 1980) (subscription to false statement made under 28 U.S.C. § 1746 equates to a false oath).

The Debtor's affirmative denial of any accounts receivable or liquidated debts owed to him and negation of any executory contracts in his schedules were false oaths. Clearly, the Debtor's work performed and materials supplied both before and after the bankruptcy filing on the 83rd Street and 96th Street Properties generated accounts receivables or liquidated debts owing him and reflected executory contracts. In addition, the Debtor's nondisclosures of asserted related liens on his schedules and the State Court Action on his statement of financial affairs also constituted false oaths. *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 367 (Bankr. S.P. Tex. 2005); *Fogel Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999); *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991).

The Debtor does not claim he was unaware that his bankruptcy petition contained false statements and omissions. However, he contends that Plaintiffs failed to prove that the false statements and omissions were made with fraudulent intent. Fraudulent intent "is rarely susceptible to direct proof" and may therefore be proven by circumstantial evidence or inferences from a course of conduct. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983); *see also In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996) ("Because direct evidence of a debtor's [fraudulent intent] usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct."); *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir. 1985) ("Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of the case."); *In re Saphire*, 139 F.2d 34, 35 (2d Cir. 1943) ("Usually the proof

8

[of fraudulent intent] must be circumstantial and must depend on inferences reasonably to be drawn from the conduct of parties. . . .").

The indicia of fraudulent intent surrounding the Debtor's false statement and omissions are manifold and powerful. According to the "Notices under Mechanic's Lien Law" filed by the Debtor, the receivables generated from the work performed and materials provided in connection with the 83rd Street and 96th Street Properties encompassed a protracted 5-6 year pre-petition period and even continued into the post-petition period. Per force, one must reasonably conclude that the Debtor's affirmative denial of any accounts receivable, other liquidated debts owing him or executory contracts, and the omission of any reference to the claimed liens in his schedules arising out of such enduring and long term commitments, were deliberate.

The work performed and materials provided relating to the 83rd Street and 96th Street Properties were pursuant to agreements between the Debtor and his father. Transactions between close family members are often suspect as contrivances designed to place a debtor's assets beyond the reach of creditors. *See In re Kaiser*, 722 F.2d at 1582; *Loeber v. Loeber (In re Loeber)*, 12 B.R. 669, 675 (Bankr. D. N.J. 1981). The denials and nondisclosures by the Debtor of his father's obligations to him may well have represented a calculated effort to insulate his father from collection efforts by creditors of the Debtor or a trustee on behalf of creditors.

As indicated above, a few weeks prior to the Debtor's examination by the Plaintiffs' under Fed. R. Bankr. P. 2004, TDI, by the Debtor, asserted a lien for services rendered and materials provided relating to the 96th Street Property. TDI is a wholly-owned controlled, alter-ego company of the Debtor. During the examination of the Debtor under Fed. R. Bankr. P. 2004, the Debtor stated that TDI, and not the Debtor, performed the work and supplied the materials for the 96th Street Property renovations. The claim of TDI is for the same work for essentially the same period of time for which the Debtor a few months later asserted a lien claim in his own

9

name. Plainly, such machinations employing an alter ego enterprise such as TDI reflect a scheme or design by the Debtor to rationalize or cover up untruths and omissions in his bankruptcy schedules.

Only four months prior to his bankruptcy filing, the Debtor was sued by Anthony Lazzaro in the State Court Action. The complaint in that lawsuit contained information suggesting fraudulent transfers to the Debtor's spouse warranting possible investigation by creditors or a trustee in a bankruptcy case. Yet, in response to the straight forward requirement of the statement of financial affairs mandating a list of all lawsuits of which the Debtor was a party within one year of the bankruptcy filing, the Debtor listed six state court actions, but omitted the State Court Action commenced by Mr. Lazzaro. The Debtor amended his statement of financial affairs two months after the bankruptcy filing and again conspicuously omitted any disclosure of the State Court Action commenced by Mr. Lazzaro. The nondisclosure of the State Court Action in both the original and amended statement of financial affairs do not appear to be inadvertent.

The cumulative effect of all the falsehoods and nondisclosures in the Debtor's bankruptcy schedules and statement of financial affairs evidences the necessary fraudulent intent required by § 727(a)(4)(A).

The Debtor argues that the misstatements and omissions in his schedules and financial affairs are immaterial, unimportant and can give rise to no realizable benefit to creditors. His contention is meritless. The threshold to materiality is a low one. Materiality is broadly defined:

> The subject of a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence or disposition of his property.

*Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (*per curiam*); *accord, Fogel Legware of Switz, Inc. v. Wills (In re Wills),* 243 B.R. 58, 62 (9th Cir. BAP 1999); *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992); *Palatine Nat. Bank of Palatine Ill. v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990); *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987). The failure of the Debtor to disclose receivables, executory contracts and the State Court Action are material in that they are relevant to the Debtor's business transactions or dealings and discovery of possible assets in the amount of approximately $280,000.[3] The purpose of § 727(a)(4)(A) is to insure that debtors provide reliable and thorough information to those with an interest in the administration of the debtor's estate. Trustees and creditors are entitled to truthful and complete disclosures in a debtor's schedules and statement of financial affairs so that they may conduct their own investigation of a debtor's affairs. It is not for a debtor to determine whether called for information is immaterial, unimportant or of no benefit to creditors. *In re Sapru,* 127 B.R. at 315; *In re Mazzola,* 4 B.R. 179, 183 (Bankr. D. Mass. 1980) ("The duty is on the debtor to answer not to evaluate"); *In re Diodati,* 9 B.R. 804, 808 (Bankr. D. Mass. 1981).

## V.

Plaintiffs' third claim for relief is premised on 11 U.S.C. § 727(a)(3). In relevant part, that statute provides:

> (a) The Court shall grant the debtor a discharge unless—
>
> . . .
>
> (3) the debtor has concealed . . . or failed to keep or preserve any recorded

---

[3] We note that the value of omitted assets is relevant to materiality, but materiality will not necessarily turn on value. *In re Olson*, 916 F. 2d at 484; *see Ford v. Ford (In re Ford,* 159 B.R. 590, 593 (Bankr. D. Or. 1993); *Sergent v. Haverland (In re Haverland)*, 150 B.R. 768, 771-72 (Bankr. S.D. Cal. 1993).

> information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case;

11 U.S.C. § 727(a)(3). A party objecting to discharge presents a prima facie case under § 727(a)(3) by showing i) that the debtor failed to maintain and preserve adequate records and ii) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Caneva v. Sun Communities Operating Lt'd Partnership (In re Caneva)* 550 F.3d 755, 761 (9th Cir. 2008); *Maridian Bank v. Alten*, 958 F.2d 1226, 1232 (3rd Cir. 1992). The initial burden lies with the objectant to demonstrate that the debtor failed to keep and preserve any books and records from which the debtor's financial condition or business transactions might be ascertained; and if the objectant show the absence of such books and records, the burden shifts to the debtor to satisfy the court that his failure to produce them was justifiable. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006); *Cox v. Landsdowne (In re Cox)*, 41 F.3d 1294, 1296-97 (9th Cir. 1994); *Meridian Bank v. Alten*, 958 F.2d at 1232-34.

The purpose of § 727(a)(3) is to vouchsafe receipt by trustees, creditors and the bankruptcy court of reliable and complete information relating to the financial posture of a debtor and the status of his bankruptcy estate. In order to deny a discharge for failure to keep or preserve books and records, the court need not find that the debtor intended to conceal his financial condition. *In re Cox*, 41 F.3d at 1297; *Crider v. Jordan*, 255 F.2d 378, 379 (4th Cir. 1958); *In re Underhill*, 82 F.2d 258, 259 (2d Cir.), *cert. denied*, 299 U.S. 546 (1936); *Miller v. Pulos (In re Pulos)*, 168 B.R. 682, 690 (Bankr. D. Minn. 1994); *Aid Auto Stores, Inc. v. Pimpinella, (In re Pimpinella)*, 133 B.R. 694, 697 (Bankr. E.D.N.Y. 1991); *In re Esposito*, 44

B.R. 817, 827 (Bankr. S.D.N.Y. 1984); *City Nat. Bank v. Savel (In re Savel)*, 29 B.R. 854, 856 (Bankr. S.D. Fl. 1983). The only showing required under § 727(a)(3) is that the debtor unjustifiably failed to keep or preserve records of his financial condition. *Meridian Bank v. Alten*, 958, F.2d at 1234.

Plaintiffs have shown a prima facie case that the Debtor failed to keep or preserve books and records, and that such failure makes it impossible to determine the Debtor's financial condition or business transactions. This bankruptcy case is marked by a virtual absence of recorded information. The Debtor has failed to produce any documentation evidencing his financial condition or business transactions, including his work on the 83rd Street and 96th Street Properties for his father. Nor has the Debtor articulated any justification for his failure to keep or preserve books and records.

Section 727(a)(3) imposes an affirmative duty on the Debtor to keep and preserve recorded information that would allow Plaintiffs to ascertain his financial condition and business transactions. The Debtor breached that duty and as such should be denied a discharge pursuant to § 727(a)(3).

## VI.

The Debtor argues that the loss of a discharge is a drastic sanction and that exceptions to discharge under § 727 are to liberally be construed so as to afford the Debtor a fresh start. In short, the Debtor contends that denial of a discharge is too draconian in this case. The Debtor forgets that the Bankruptcy Code, by its very nature, implicates, another equally important consideration. Creditors must be fairly and equitably dealt with in a bankruptcy case. Provisions of the Bankruptcy Code like § 727(a)(4)(A) and § 727(a)(3) are designed to insure that complete, truthful and reliable information are put forward by debtors. Indeed, the successful

administration of the Bankruptcy Code hinges on a debtor's veracity and his willingness to make full disclosure.  As shown above, this Debtor's false oaths and failure to keep or preserve documentation of his financial affairs were real and substantial.  A discharge and concomitant fresh start may be granted only if a debtor presents accurate and complete account of his financial affairs, something which this Debtor has failed to do. The Debtor may well be reminded of the wise and still relevant observation made by Judge Learned Hand more than 75 years ago:

> Court will not measure the dishonesty of a bankrupt, once that is shown; a discharge is a privilege granted only to such as do not practice on their creditors in any way.  The law forbids all efforts to put property beyond the reach of creditors no matter what its value; so long as courts are tolerant of such conduct men will engage in it and the purposes of the bankruptcy act will be balked.

*Feyman v. Rosenthal (In re Feynman)*, 77 F.2d 320, 321 (2d Cir. 1935).

## VII.

Based on all of the foregoing, Plaintiffs' motion for summary judgment is granted and the Debtor is denied a discharge pursuant to 11 U.S.C. § 727(a)(4) (A) and § 727(a)(3).

**IT IS SO ORDERED.**

Dated: Brooklyn, New York
         May 6, 2011

                                              s/Jerome Feller
                                              Jerome Feller
                                              United States Bankruptcy Judge