UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re

       Thomas Albert DeMartino,                       Chapter 7
                                                               Case No. 1-09-40443-jf

                       Debtor.

--------------------------------------------------------X

Richard E. O'Connell, *as Chapter 7 Trustee
of the Estate of Thomas Albert DeMartino,*
and Centennial Insurance Company,

                    Plaintiffs.                  Adv. Pro. No. 1-09-01367-jf

    -against-

Thomas Albert DeMartino,

                    Defendant.
--------------------------------------------------------X

**DECISION DENYING MOTION UNDER FED. R. CIV. P. 60(b)
FOR RELIEF FROM ORDER DENYING DISCHARGE**

**APPEARANCES:**

Jordan C. Pilevsky, Esq.  
LaMonica Herbst & Maniscalco, LLP  
3305 Jerusalem Avenue, Suite 201  
Wantagh, NY 11793  
*Attorneys for Plaintiff Richard E. O'Connell*

Richard B. Demas, Esq.  
Gottesman Wolgel, Malamy Flynn &  
    Weinberg, P.C.  
11 Hanover Square, 11th Floor  
New York, NY 10005  
*Attorneys for Plaintiff Centennial Insurance Company*

Lawrence F. Morrison, Esq.  
The Morrison Law Offices, P.C.  
87 Walker Street, Floor 2  
New York, NY 10013  
*Attorneys for Defendant Thomas Albert DeMartino*

**Jerome Feller**
**United States Bankruptcy Judge**

On May 6, 2011, the Debtor was denied a discharge pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(4)(A) ("Order Denying Discharge"). The facts and circumstances underlying the determination to grant the Plaintiffs' motion for summary judgment ("Plaintiffs' Motion") and to deny the Debtor a discharge are set forth in *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122 (Bankr. E.D.N.Y. 2011). The Court assumes familiarity with that decision.

Before the Court is the Debtor's motion for relief from the Order Denying Discharge pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b)"), made applicable to this proceeding by Fed. R. Bankr. P. 9024 ("Debtor's Motion"). ECF No. 40. The Debtor's main contention is that his prior counsel's failure to submit an E.D.N.Y. LBR 7056-1 counterstatement of material facts in dispute in opposition to the Plaintiffs' Motion constitutes "excusable neglect" under Rule 60(b)(1). In connection with the relief sought under Rule 60(b), the Debtor separately moves to reopen his Chapter 7 bankruptcy case.

The Order Denying Discharge was entered after extensive litigation in which the Debtor was at all times vigorously represented by counsel. A motion under Rule 60(b) requires a movant to demonstrate exceptional circumstances warranting relief. Yet the Debtor does not provide a plausible explanation for why he did not submit adequate opposition to the Plaintiffs' Motion. The Debtor does not explain why this motion was made months after the Order Denying Discharge was entered. *See* Fed. R. Bankr. P. 8002(a) ("The notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from."). He does not cite the controlling or relevant law of this Circuit. And he does not offer evidence to support his motion.

As described herein, the Debtor did not demonstrate excusable neglect under Rule 60(b)(1). Accordingly, the Debtor's Motion is denied.

**I.**

Thomas Albert DeMartino filed a petition for relief under Chapter 7 of Title 11 of the United States Code on January 23, 2009. At the time, he was represented by Stuart P. Gelberg, Esq. On September 23, 2009, Richard J. O'Connell, the Chapter 7 Trustee of the Debtor's estate ("Trustee"), and creditor Centennial Insurance Company ("Centennial") commenced separate adversary proceedings objecting to the Debtor's discharge under various provisions of 11 U.S.C. § 727(a). In May 2010, Centennial's action was dismissed pursuant to a stipulation and order, and the Trustee and Centennial ("Plaintiffs") filed an amended complaint in this proceeding as co-plaintiffs. ECF Nos. 13, 16. The Debtor, represented by Vivian M. Williams, Esq. ("Williams"), filed an answer to the amended complaint on May 18, 2010. ECF No. 17.

On September 7, 2010, the Plaintiffs filed a motion for summary judgment, as well as a statement pursuant to E.D.N.Y. LBR 7056-1, supported by various exhibits. ECF Nos. 19, 20. On October 1, 2010, the Debtor filed opposition together with a cross-motion for costs and attorney's fees pursuant to 28 U.S.C. § 1927 ("Opposition Papers"). ECF No. 25. The Opposition Papers did not include an E.D.N.Y. LBR 7056-1 counterstatement of material facts in dispute or an affidavit from the Debtor. On December 7, 2010, the Court heard oral argument on the Plaintiffs' Motion and reserved decision.

The Order Denying Discharge was entered in both the Debtor's Chapter 7 case and this adversary proceeding on May 6, 2011. The Debtor did not appeal the Order Denying Discharge, and on August 12, 2011, his bankruptcy case was closed without the issuance of a discharge. On October 5, 2011, the Debtor, no longer represented by Williams, but now represented by a new lawyer, Lawrence F. Morrison, Esq. ("Morrison"), filed a motion for relief from the Order Denying Discharge, only to withdraw that motion on December 19, 2011. ECF Nos. 36, 39. On February 9, 2012, the Debtor, by Morrison, filed the instant motion and a supporting

3

memorandum of law. ECF Nos. 40, 41. He separately filed a motion to reopen the Chapter 7 case.

The Debtor's Motion is not supported by an affidavit from Williams or other evidence. Attached to the memorandum of law is a "verification" by the Debtor attesting that the "statements contained therein are true to the best of [the Debtor's] knowledge, information and belief." ECF No. 41. On May 15, 2012, Centennial filed opposition. ECF No. 45. That same day, the Trustee filed a declaration of joinder in Centennial's opposition. ECF No. 47. The Debtor filed a reply on June 14, 2012. ECF No. 51.

The Court held a hearing on the Debtor's Motion on June 19, 2012, at which counsel for the Debtor, Centennial, and the Trustee appeared and were heard. At the hearing, the Court asked the parties for briefing on the issue of whether the faulty "handling of litigation by counsel [can] constitute a basis for relief from an order" or judgment under Rule 60(b)(1) "and if so, under what circumstances." ECF No. 55 at 12:8-10.

On July 13, 2012, the Debtor filed a memorandum of law purporting to respond to the Court's query. ECF No. 54. Centennial and the Trustee each filed separate responses. ECF Nos. 60, 63. The Court held a final hearing on the Debtor's Motion on November 29, 2012, at which counsel for the Debtor, Centennial, and the Trustee appeared and were heard, and the Court reserved decision.

**II.**

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

4

> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Whether relief under Rule 60(b) is warranted is a matter of the court's sound discretion. *See Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

"A motion under Rule 60(b) must be made within a reasonable time–and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Where relief under subsections (1) through (5) are implicated, a party may not seek relief under subsection (6). In this case, the Debtor seeks relief under subsection (1), and only that subsection applies. *See, e.g.*, *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) (noting that "[r]elief from counsel's error is normally sought pursuant to 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect").

As eloquently stated by one court:

> Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts. It cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.

*Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (internal quotation marks and alterations omitted). As a result, the unique nature of the relief afforded by Rule 60(b) must be viewed in the context in which it arises. If relief is sought based on subsection (5), for example, the required showing should be clear. But in other circumstances, as here, the movant "must demonstrate 'exceptional circumstances' justifying the extraordinary relief requested." *Emp'rs Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824-25 (2d Cir. 1996) (per curiam) (quoting *Nemaizer*, 793 F.2d at 61). *See United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d

Cir. 2001) (stating that a motion under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances").

The Second Circuit test requires the movant to offer and establish (1) highly convincing evidence in support of the motion; (2) good cause for failing to act sooner; and (3) lack of prejudice to the non-moving party. *See, e.g.*, *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 84 (S.D.N.Y. 2003). Courts refuse to allow Rule 60(b) to be used as a vehicle to re-litigate the merits of a case. *Neimazer*, 793 F.2d at 61. And "[i]n no circumstances" may it be used "as a substitute for an appeal . . . [not made] in a timely fashion." *Stevens*, 676 F.3d at 67.

Context is particularly important when considering "excusable neglect" under Rule 60(b)(1). As stated in the landmark Supreme Court decision defining the term, excusable neglect is an "elastic concept." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (internal quotation marks omitted). Accordingly, the meaning of "excusable neglect" will often "depend[] upon the procedural framework in which it is to be applied." *Xuchang Rihetai Human Hair Goods Co. v. Sun (In re Sun)*, 323 B.R. 561, 564 (Bankr. E.D.N.Y. 2005).

In *Pioneer*, the Supreme Court found that a party's failure to file a proof of claim within the required time was excusable because of the unusual and unclear nature of the notice of the bar date. *Pioneer*, 507 U.S. at 397-98. The Supreme Court held that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392. Even so, "[i]n assessing the culpability of respondents' counsel," the Supreme Court gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date." *Id.* at 398. Rather, the Court found it "significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases." *Id.*

*Pioneer* provides guidance on the meaning of both "neglect" and "excusable." The Court concluded that "neglect" applies to conduct "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control." *Id.* at 388. It then set forth factors to consider when determining whether such neglect is excusable. According to the Court, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. These factors "include" (1) "the danger of prejudice [to the non-moving party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Id.*[1]

The movant must provide a convincing explanation for the delay in order to satisfy the third *Pioneer* factor. *See, e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004); *Emp'rs Mut. Cas. Co.*, 75 F.3d at 825 (affirming lower court's denial of Rule 60(b)(1) motion based upon movant's failure to offer a credible explanation); *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 35-36 (N.D.N.Y. 1995) (affirming bankruptcy court's determination that neglect was not excused where reason for delay was invalid). *See also Cintron-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 527 (1st Cir. 2002) (stating that "[a]t a bare minimum, a party who seeks relief from judgment on the basis of excusable neglect must offer a convincing explanation as to why the neglect was excusable").

Prior to *Pioneer*, the Second Circuit applied rigid criteria when analyzing excusable neglect. Counsel's ignorance of mandated rules of procedure could never be excusable. *See, e.g.*, *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir. 1985). However, in *Canfield*, the Second Circuit found that although per se rules would no longer be followed after *Pioneer*, when

---

[1] Although *Pioneer* was decided under Fed. R. Bankr. P. 9006(b)(1), it is well settled that the *Pioneer* factors apply to determinations of excusable neglect under Rule 60(b). *See, e.g.*, *Canfield v. Van Atta Buick/GMC Truck. Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (per curiam).

7

a "rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Canfield*, 127 F.3d at 251. In reaching this conclusion, the Second Circuit pointed out that *Pioneer* found that in most cases, inadvertence, ignorance, and mistakes will not provide a basis to find neglect excusable. *Id.* at 250 (citing *Pioneer*, 507 U.S. at 392). The Second Circuit then explained:

> In accordance with that holding, a finding that the failure to comply with a filing deadline was excusable may in some circumstances be appropriate. For example, neglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations, or where an apparent conflict exists between two rules. Other grounds may exist, but we need not canvass them today.

*Id.* (citing *Pioneer*, 507 U.S. at 395). Therefore, ignorance or inadvertence alone is rarely a sufficient excuse. *See, e.g.*, *Williams*, 219 F.R.D. at 85; *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 387 (E.D.N.Y. 1998); *Miller v. City of Ithaca*, 2012 WL 1565110, at *1 (N.D.N.Y. May 2, 2012) (refusing to grant additional time to file a statement of disputed facts because the local rule was "entirely clear"); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 293 (D. Conn. 2008) (denying motion predicated on counsel's failure to file a statement of material facts); *PDS Eng'g & Constr., Inc. v. Link Corp. (In re Lyman)*, 254 B.R. 517, 519-20 (Bankr. D. Conn. 2000) (same).

As a result, the third *Pioneer* factor, the reason for the delay, is given "more weight than the other *Pioneer* factors" in the Second Circuit. *In re Victory Mem'l Hosp.*, 435 B.R. 1, 5 (Bankr. E.D.N.Y. 2010) (excusable neglect under Fed. R. Bankr. P. 9006(b)(1)). *See, e.g.*, *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (same); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (excusable neglect under Fed. R. App. P. 4(a)(5)), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004); *Carpio v. Luther*, 2012 WL 694841, at *1 (W.D.N.Y. Mar. 1, 2012) (excusable neglect under Rule 60(b)(1)); *Miller*, 2012 WL 1565110, at *1 (excusable neglect

8

under Fed. R. Civ. P. 6(b)(1)(B)); *Canale v. Manco Power Sports, LLC*, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010) (excusable neglect under Rule 60(b)(1)); *Hartford Steam Boiler Inspection and Ins. Co. v. Se. Refractories, Inc.*, 212 F.R.D. 62, 65 (D. Conn. 2003) (excusable neglect under Rule 60(b)(1)).

## III.

There are good reasons why courts do not excuse parties from the conduct of their counsel absent exceptional circumstances. It follows from two bedrock principles of our legal system. The first, mentioned above, is the crucial importance of the finality of judgments. *See also United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977) (stating that "courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case"); *Taub v. Hershkowitz (In re Taub)*, 421 B.R. 93, 97 (Bankr. E.D.N.Y. 2009) (noting that relief from judgments is "at odds with the principle of finality and 'the just, speedy, and inexpensive determination of every case and proceeding'") (quoting Fed. R. Bankr. P. 1001).

The second is the age-old principle that parties are bound by the actions of their counsel, including a counsel's neglect. As explained by the Supreme Court in *Link v. Wabash Railroad Company*, based upon precedent stretching back to the nineteenth century:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

9

370 U.S. 626, 633-34 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)). Courts must uphold these principles in order to maintain the integrity and functionality of our legal system.

Accordingly, in *Pioneer*, the Supreme Court adopted many aspects of the Sixth Circuit Court of Appeals' excusable neglect analysis, but explained that:

> There is one aspect of the Court of Appeals' analysis, however, with which we disagree. The Court of Appeals suggested that it would be inappropriate to penalize respondents for the omissions of their attorney, reasoning that "the ultimate responsibility of filing the . . . proof[s] of clai[m] rested with [respondents'] counsel." The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date. In this, the court erred.

*Pioneer*, 507 U.S. at 396 (alterations in original) (internal citation omitted). Citing the principles of agency underlying the attorney-client relationship expressed in *Wabash*, as well as in *United States v. Boyle*, 469 U.S. 241 (1985), the Supreme Court emphasized that clients must "be held accountable for the acts and omissions of their chosen counsel." *Pioneer*, 507 U.S. at 397.[2]

It follows from this discussion, that the excusable neglect standard will not be met when neglect is the result of a losing litigation strategy. *See generally Ackermann v. United States*, 340 U.S. 193, 198 (1950) (stating that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from"); *Nemaizer*, 793 F.2d at 62 (explaining that "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief"); *Silverman v. RTV Commc'ns Group, Inc.*, 2002 WL 483421, at *3 (S.D.N.Y. Mar. 28, 2002) (finding there were no grounds to vacate a default judgment, because willfully

---

[2] *See also S.E.C. v. Coletti*, 162 F.3d 1148, at *2 (2d Cir. 1998) ("Coletti's position that his attorney was to blame for his error may constitute grounds for a civil malpractice claim against the attorney, but it is well-settled that the conduct of an attorney is imputed to his client, *S.E.C. v. McNulty,* 137 F.3d 732, 739 (2d Cir. 1998), and hence Coletti cannot evade the consequences of his attorney's negligent conduct.").

chosen litigation strategies did not constitute "mistake" under Rule 60(b)(1)); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (stating that "tactical decision" to withhold affidavits on motion for summary judgment could not be deemed excusable neglect).

For all these reasons, particular emphasis must be placed on the excuse offered for *counsel's* neglect, which otherwise typically is not grounds for relief from a judgment or order. Without this limitation, motions under Rule 60(b)(1) would be all too common. For every attorney representing a client, there would be another waiting to play Monday-morning quarterback. In this sense, the excuse requirement "acts as a limitation necessary to prevent abuse by the parties[.]" *Cobos*, 179 F.R.D. at 386. *See also Pioneer*, 507 U.S. at 395 ("It is [the excuse] requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve"). Not surprisingly, motions under Rule 60(b)(1) are disfavored in the Second Circuit, and the burden on the moving party is substantial.

## IV.

In the main, our assessment of the Debtor's Motion is predicated on considering the first two requirements of the general test in the Second Circuit for motions under Rule 60(b), that the movant provide and establish (1) highly convincing evidence supporting the motion and (2) good cause for failing to act sooner. Because "excusable neglect" under Rule 60(b)(1) is at issue, the Second Circuit test is analyzed through the lens of the third *Pioneer* factor, the reason for the delay.

The Debtor attempts to justify the neglect in this case with two bald assertions. The first is that he failed to comply with E.D.N.Y LBR 7056-1 because Williams, his prior counsel, was "not familiar with bankruptcy litigation procedure[.]" ECF No. 40 ¶ 15. In relevant part, the local rule provides:

11

> The opposition to a motion for summary judgment shall include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party.

E.D.N.Y. LBR 7056-1. This rule is clear and unambiguous. As such, counsel's misunderstanding of it only rarely would be excusable under Rule 60(b)(1). *See Canfield*, 127 F.3d at 250-251.[3]

Here, the Debtor does not describe any exceptional circumstances. In addition, the Debtor's contention is not supported by any evidence, such as by an affidavit of Williams. Perhaps this is not surprising. As Morrison himself noted at oral argument, "it's common knowledge in a [sic] bankruptcy bar that you must have this local Bankruptcy Rule 7056-1 statement. It's just known." ECF No. 55 at 5:20-22. As a lawyer often practicing in the bankruptcy courts, this requisite in defending a summary judgment motion was most likely not unknown to Williams.

The Debtor's argument is also contradicted by the record. Even if it were true that Williams was not aware of E.D.N.Y. LBR 7056-1 at the outset of the adversary proceeding, the Plaintiffs' Motion put him on notice of the rule. Plaintiffs filed their motion for summary judgment on September 7, 2010. They separately filed a statement of undisputed material facts pursuant to E.D.N.Y. LBR 7056-1 concurrently with the motion. ECF No. 20. And both were served on Williams. ECF No. 21.

On September 30, 2010, Williams filed an affirmation requesting a two-day extension to file opposition to the Plaintiffs' Motion. ECF No. 23. Williams stated that "[t]he reason for my

---

[3] The Debtor's argument ignores that, in addition to not filing an E.D.N.Y. LBR 7056-1 statement, he did not file an affidavit or present admissible evidence. *See DeMartino*, 448 B.R. at 127 ("[The Debtor] has failed to file a separate counter-statement of specific factual disputes *or any admissible evidence to support any factual disputes.* Accordingly, the Court concludes that there are no genuine issues of material fact in dispute.") (emphasis added). Fed. R. Civ. P. 56 is also clear and unambiguous.

request is that my client was unable to come into my office yesterday to sign his affidavit." ECF No. 23 ¶ 3. In other words, Williams apparently contemplated filing an affidavit. However, the Opposition Papers, filed on October 1, 2010, did not include an affidavit or a counterstatement pursuant to E.D.N.Y. LBR 7056-1.

The hearing on the Plaintiffs' Motion scheduled for October 5, 2010 was adjourned to November 23, 2010. ECF No. 26. On November 18, 2010, the Trustee submitted a reply in which he noted that the Debtor "failed to attach an affidavit in support of the assertions claimed in the" Opposition Papers, and "failed to comply with Local Bankruptcy Rule 7056-1 by providing a response to Trustee's Statement of Material Facts." ECF No. 27 ¶¶ 3, 4.

On the morning of November 23, 2011, Williams requested a continuation of the proceedings premised on an Order of Rehabilitation that had been entered with respect to Centennial on September 14, 2010. ECF No. 28. In connection with this request, Williams stated that "[t]he Trustee's claim that [the Debtor] fails to present evidence overlooks" that the order of rehabilitation precludes litigating claims against Centennial. ECF No. 28 ¶ 13. The excuse Williams offered is not a particularly good one, but there can be no doubt that he was aware of the arguments raised in the Trustee's reply.[4]

Nine days later, on December 2, 2010, Centennial filed a declaration in response to the Opposition Papers which noted that the "Debtor did not file a separate statement of material facts contending the existence of a genuine issue to be tried" and the "Debtor did not even attach exhibits" to the Opposition Papers. ECF No. 30 ¶ 7.

On December 7, 2010, the Court held another hearing on the Plaintiffs' Motion. During the hearing, the Debtor's failure to file a counterstatement of material facts in dispute was

---

[4] That same day, following the hearing, an agent of the Superintendent of Insurance filed a letter indicating that under the Order of Rehabilitation, Centennial continued to be a proper party in this proceeding. ECF No. 29.

considered and discussed. At one point, the Court raised the possibility that the Debtor did not file an E.D.N.Y. LBR 7056-1 counterstatement because he did not dispute the facts asserted by the Plaintiffs, and that "what Mr. Williams is probably saying is that number one, the facts do not rise to the level of fraudulent intent. And number two," the facts that were not disclosed were not material. ECF No. 31 at 49:5-8. The Court then asked Williams if that was his position, and Williams replied, "[t]hank you, Your Honor, that's what I'm saying." ECF No. 31 at 49:11-12.

Based on the documents readily available on the docket of this proceeding, there are no grounds for the assertion that Williams was unaware of the requirement of filing the E.D.N.Y. LBR 7056-1 statement. In the unlikely event Williams was unaware of it when the Plaintiffs' Motion was filed on September 7, 2010, he had three months to learn of the requirement and, if necessary, request additional time to submit a counterstatement to the Court. As just described, the matter was heavily litigated, and Williams did not hesitate to request an extension of time when he believed he needed one. A request in the guise of a Rule 60(b) motion more than nine months after a final judgment and order has been entered cannot be honored.

In the absence of an adequate excuse, and based on the entire record, the purported neglect appears to be no more than a failed litigation strategy. The deliberate tactical decisions of counsel in this case cannot serve as a basis for relief under Rule 60(b)(1). For all these reasons, the Debtor's claim of ignorance is utterly implausible, and fails as a matter of law.

The second excuse offered by the Debtor is, at the very least, equally incredible. The Debtor contends that Williams was too ill to file the statement. ECF No. 40 ¶ 16. His only attempt to substantiate that claim is by way of a letter from Williams filed on the Court's docket on March 24, 2011. ECF No. 51 ¶ 11. In the letter, Williams indicates that "an illness [] has been affecting me for several weeks and became worse" the prior week. ECF No. 34.

Plaintiffs' Motion was filed on September 7, 2010, Williams filed the Opposition Papers on October 1, 2010, and final argument was held on December 7, 2010. In other words, the letter was dated nearly seven months after the Debtor's opposition was filed and more than three months after the Court reserved decision. At oral argument, Morrison did not attempt to explain how this letter supported his client's position, even after opposing counsel noted the date of the letter. His argument based on illness is highly implausible and fails as a matter of law.

The Debtor's unsupported and unconvincing explanation for his failure to file an E.D.N.Y. LBR 7056-1 counterstatement amounts to no explanation at all. Based on the Debtor's inability to provide a credible excuse for failing to file the E.D.N.Y. LBR 7056-1 statement, the remaining equitable factors under *Pioneer* and the Second Circuit test do not provide adequate grounds to grant the Debtor's Motion.

Moreover, the Debtor did not establish his good faith. The explanations provided for why the Debtor did not comply with the local rule are incredulous. Mere reliance on counsel cannot establish good faith here. No explanation has been provided for why the Debtor did not timely seek an appeal of the Order Denying Discharge, or why he waited until February 9, 2012, to file the instant motion. It is ironic that the Debtor does not even submit as an exhibit the very E.D.N.Y. LBR 7056-1 counterstatement he contends would have defeated the Plaintiffs' Motion.

## V.

The Debtor argues that relief under Rule 60(b) is especially warranted in this case because denial of a discharge is a harsh sanction. The Debtor misunderstands the purpose of Rule 60(b)(1) in the context in which it is being applied.[5] The Court already considered the impact of

---

[5] Similarly, the Debtor's Motion relies on cases where a judgment has been entered on default. Those cases are irrelevant. The Order Denying Discharge here was entered in the context of a contested motion for summary judgment. *See, e.g.*, *Chorosevic v. MetLife Choices*, 600 F.3d 934, 947 (8th Cir. 2010) ("In cases where the judicial disfavor for default dispositions is not implicated, courts may focus primarily on the reason for the movant's delay.") (internal quotation marks omitted).

the penalty placed on the Debtor in a proceeding litigated through summary judgment. *See DeMartino*, 448 B.R. at 131. It is not now a significant factor under Rule 60(b)(1). To the extent that Rule 60(b)(1) allows a second bite at the apple, that is only possible upon a showing of exceptional circumstances warranting relief. In this case, that means that the Debtor was required to establish that there was some credible reason beyond his counsel's ignorance, inadvertence, mistake, or neglect that caused him not to file the E.D.N.Y. LBR 7056-1 counterstatement.

The Debtor may be dissatisfied with how his prior counsel defended this lawsuit, but the principles of agency underlying the attorney-client relationship bind him to that conduct. In all events, Rule 60(b) may not be used as a substitute for a timely appeal. The obvious reason for this is that the required timeliness of an appeal is "'mandatory and jurisdictional.'" *Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 55 (2d Cir. 1997) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982) (per curiam)). If the law were otherwise, every debtor who is denied a discharge would have license to re-litigate, and final judgments in this and similar contexts would have little meaning. Our jurisprudential system does not permit, and could not withstand, such a result.

In short, because there are no exceptional circumstances that prevented the Debtor from filing an E.D.N.Y. LBR 7056-1 counterstatement of material disputed facts, there is no basis to disturb the final order of this Court denying the Debtor a discharge.

## VI.

Based on all of the foregoing, the Debtor's Motion is denied. Separate orders will be entered denying the Debtor's Motion and the Debtor's request to reopen the main case.

Dated: Brooklyn, New York
      December 26, 2012

                                          s/Jerome Feller
                                          Jerome Feller
                                          United States Bankruptcy Judge